**In re James and Carol L. BARNES, Debtors.**

No. 01–20765–A–13J.

United States Bankruptcy Court, E.D. California, Sacramento Division.

April 12, 2002.

Jan P. Johnson, Sacramento, CA, Chapter 13 Trustee.

Gregory J. Hughes, Roseville, CA, for Michael F. Burkhart, former Chapter 7 Trustee.

Al J. Patrick, Auburn, CA, for debtors.

## MEMORANDUM DECISION

MICHAEL S. McMANUS, Chief Judge.

Before the court is the motion of the chapter 13 trustee to reconvert the case to chapter 7 (motion control no. JPJ # 1), the objections of the chapter 13 trustee and the former chapter 7 trustee to the exemptions claimed by the debtors (motion control nos. JPJ # 2 and GJH # 1 respectively), and the objections of both trustees to the confirmation of the debtors' proposed chapter 13 plan (motion control nos. JPJ # 3 and GJH # 2).

### I

The debtors challenge the right of the former chapter 7 trustee to appear in these matters. Their objection is over-ruled. The court previously awarded compensation to the former chapter 7 trustee as an administrative expense. Because of this award, he is a "party in interest" with standing to object to confirmation, object to exemptions, and move to convert the case.

The former chapter 7 trustee is appearing in these matters in order to protect his personal financial interest rather than as the representative of the estate. *Cf. In re DeLash,* 260 B.R. 4 (Bankr. E.D.Cal.2000). He is not a "creditor" because he did not hold a claim against the debtors that arose prior to the filing of the petition. 11 U.S.C. § 101(10)(A). However, 11 U.S.C. §§ 522(*l* ), 1307(c), 1324 permit a "party in interest," not just a creditor, to object to confirmation of a plan and exemptions and to move to convert the

case. The term "party in interest" is broad enough to include anyone whose financial interest may be affected by the outcome of a bankruptcy case. *Cf.* 11 U.S.C. § 1109(b). As an administrative claimant, the former chapter 7 trustee has the necessary financial interest to be considered a party in interest with standing to appear on the motion and objections. *In re DeLash,* 260 B.R. at 7–8; *In re Wells,* 87 B.R. 732, 736 (Bankr.N.D.Ga.1988).

## II

■ The Debtors initially filed this case under chapter 7 of the Bankruptcy Code. While the case was pending under chapter 7, the chapter 7 trustee discovered that the debtors owned an annuity and the beneficial interest in two self-settled trusts. The debtors did not list these assets in their schedules. The assets held in the two trusts included a motor home used by the debtors as their residence and a secured $3,800.00 promissory note payable to the debtors.

The debtors' initial failure to disclose these assets prompted the former chapter 7 trustee to file a complaint to deny the debtors' chapter 7 discharge and to retain counsel to recover the unscheduled assets. On July 5, 2001, before an answer was due to the discharge complaint and before the former chapter 7 trustee could take any significant steps toward recovering the unscheduled assets, the debtors converted their case to chapter 13. Because a debtor has one unqualified right to convert a petition from chapter 7 to chapter 13, an order was entered converting the petition without a hearing. 11 U.S.C. § 706(a). *Cf. Beatty v. Traub (In re Beatty),* 162 B.R. 853 (9th Cir. BAP 1994) (construing 11 U.S.C. § 1307(b) as conferring on a chapter 13 debtor the unqualified right to dismiss a chapter 13 petition).

On July 26, 2001, after the debtors failed to file a chapter 13 plan within 15 days of the conversion as required by Fed. R. Bankr.P. 3015(b), the chapter 13 trustee moved to reconvert the case to chapter 7. On August 13, 2001, the former chapter 7 trustee joined in the motion. Both trustees apparently suspected that the debtors' failure to timely file a chapter 13 plan was intended to cause the dismissal of the case. Once dismissed, the unscheduled assets would be beyond the reach of the bankruptcy court and the debtors' creditors.

■ Unlike a chapter 13 case, a debtor has no absolute right to dismiss a chapter 7 case. *See* 11 U.S.C. §§ 707(a) and 1307(b). *Turpen v. Eide (In re Turpen),* 244 B.R. 431, 434 (8th Cir. BAP 2000). Section 707(a) permits the dismissal of a chapter 7 case only for cause. Where dismissal is prejudicial to creditors it cannot be granted. *Gill v. Hall (In re Hall),* 15 B.R. 913, 917 (9th Cir. BAP 1981), *citing Schroeder v. International Airport Inn Partnership (In re International Airport Inn Partnership),* 517 F.2d 510 (9th Cir.1975).

Therefore, given the existence of assets that the chapter 7 trustee could have liquidated for the benefit of unsecured creditors, the court would have been unlikely to dismiss the chapter 7 petition if the debtors had requested a dismissal. The likelihood of such outcome undoubtedly prompted the debtors to proceed more obliquely. First, they converted their case from chapter 7 to chapter 13 in order to displace the chapter 7 trustee, and then they failed to file a proposed plan in the hope that this would cause the dismissal of the petition.

■ A chapter 7 debtor has the right to convert the petition from chapter 7 to chapter 13. 11 U.S.C. § 706(a). The conversion displaces the chapter 7 trustee and preempts his administration of the estate. In this case, the conversion prevented the former chapter 7 trustee from recovering the unscheduled assets from the debtors.

As noted by this court in *In re DeLash*, 260 B.R. at 7, "[o]nce a chapter 7 case is converted to chapter 13, 'the service of any trustee ... that is serving in the case before such conversion' is terminated. 11 U.S.C. § 348(e)."

Next, the debtors failed to diligently prosecute their chapter 13 petition in the hope that this would prompt the court to dismiss the case.

■ A debtor has no absolute right to request dismissal of a converted chapter 13 case. Section 1307(b) restricts the debtor's unqualified right to request dismissal only to cases that have not been previously converted from another chapter. A debtor, however, can sometimes "bait" the chapter 13 trustee into moving for dismissal by not attending the meeting of creditors, failing to file a chapter 13 plan, or failing to otherwise prosecute the chapter 13 case.

The debtors in this case did not file a plan within 15 days of the conversion as required by Fed. R. Bankr.P. 3015(b). The debtors did not file their plan until August 21, 2001, thirty-one days after it was due, and after the chapter 13 trustee and the former chapter 7 trustee had jointly requested the reconversion of the case. In other words, the trustees believe that the debtors filed their plan only after learning that their ploy to have their case dismissed had failed.

There is circumstantial evidence to suggest that the debtors converted their petition to chapter 13 with the purpose of not only unseating an aggressive chapter 7 trustee, but also escaping the scrutiny of the bankruptcy court with the unscheduled assets in hand.

First, there is the debtors' delay in proposing a plan.

Second, as indicated below, the debtors will be unable to exempt any of their previously unscheduled assets. The debtors knew, when they converted their case to chapter 13, that there would be a substantial controversy regarding their receipt of a chapter 7 discharge and the allowance of their exemptions. The former chapter 7 trustee had begun the process of objecting to their discharge and seeking a turnover of the unscheduled assets. A dismissal would end the debtors' burgeoning problems with the former chapter 7 trustee.

Third, as explained below, the proposed chapter 13 plan is not confirmable because, among other reasons, it is not feasible. This is not a surprise to the debtors. In their original Schedules I and J, the debtors showed no disposable income with which to fund a plan. While the debtors amended Schedule J to reduce expenses in order to generate disposable income, the debtors have been unable to actually pay the amount projected, $765.00 each month, to the trustee.[1] At the hearing on these matters, the debtors conceded that they are unable to maintain the payments required by the proposed plan.

In other words, the debtors have known that their plan is a forlorn hope. It is meant only to delay the inevitable liquidation of their nonexempt assets.

■ The court concludes that a chapter 7 debtor has the unqualified right to convert his petition to chapter 13. 11 U.S.C. § 706(a). There is no such thing as a "bad faith conversion." *But see In re Marcakis*, 254 B.R. 77, 79–82 (Bankr.E.D.N.Y.2000); *In re Krishnaya*, 263 B.R. 63 (Bankr. S.D.N.Y.2001). Nonetheless, the debtor's right to convert from chapter 7 to chapter 13 is tempered by the court's right to reconvert the case pursuant to 11 U.S.C.

---

1. By the time of the hearing on this matters, the debtors had paid only $50.00 a month for the first eight months and had failed to pay $765.00 in September and October 2001.

§ 1307(c). *See In re Pakuris*, 262 B.R. 330 (Bankr.E.D.Pa.2001). When the initial conversion to chapter 13 is an attempt to preempt the chapter 7 trustee's administration of the case rather than a legitimate attempt at reorganization, as here, the court may reconvert the case to chapter 7.

## III

The trustees also object to the debtors' exemption of the undisclosed assets.

## A

The debtors are the settlors and the beneficiaries of two self-settled trusts which contain "spendthrift" provisions. That is, the trust instruments preclude the alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, execution, or levy of any kind, either voluntary or involuntary, of the debtors' beneficial interest in the trust.

■ Facially, the debtors' beneficial interest in these trusts is excluded from the property of the bankruptcy estate by 11 U.S.C. § 541(c)(2). Section 541(c)(2) provides that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title."

California Probate Code § 15304(a) provides:

> If the settlor is a beneficiary of a trust created by the settlor and the settlor's interest is subject to a provision restraining the voluntary or involuntary transfer of the settlor's interest, the restraint is invalid against transferees or creditors of the settlor. The invalidity of the restraint on transfer does not affect the validity of the trust.

The debtors are the settlors and beneficiaries of both trusts. By statute, then, the spendthrift provisions are invalid. Because this restraint on alienation is unenforceable, the debtors' beneficial interest in the two trusts is not excluded from the bankruptcy estate.

Therefore, in order to place their beneficial interest or the assets of the trusts beyond the reach of a chapter 7 trustee or the operation of 11 U.S.C. § 1325(a)(4), the debtors must exempt either the beneficial interest or the individual assets. As pointed out by the trustees, though, the debtors can exempt neither their beneficial interest in the trusts, nor the assets of the trusts.

As beneficiaries of the trusts, the debtors own the beneficial interest in the trusts, but not the trusts' assets. They can attempt to exempt their beneficial interest but not the individual assets in the trust. A review of amended Schedule C reveals that the debtors have not claimed their beneficial interest in the trusts as exempt.

■ The court notes that there appears to be no applicable exemption in California Civil Procedure Code §§ 703.010 *et seq.* that would permit the debtors to exempt their beneficial interest in the trusts. This may be the reason for the debtors' attempt to exempt the trust assets rather than their beneficial interest in the trusts. This attempt, however, cannot succeed because the trusts, not the debtors, own the assets in the trusts.

As settlors of the trusts, the debtors might be able to exempt the assets in the trusts. Their ability to do so hinges on whether or not the trusts are irrevocable. California Probate Code § 18200 provides: "If the settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor." If a settlor's creditors can reach the trust property, that is, if a trust is revocable, then the settlor is "entitled to all exemptions as provided in Chapter 4

(commencing with Section 703.010) of Division 2 of Title 9 or Part 2 of the Code of Civil Procedure." Cal. Probate Code § 18201.

In this case, because the debtors made the trusts irrevocable, they are not permitted to exempt assets of the trusts. The debtors have nonetheless claimed a homestead exemption for the motor home owned by one of the two trusts. Because the motor home is an asset of the trusts, however, the debtors cannot exempt it. The objection to the exemption of the motor home is sustained.

**B**

In 1998, prior to filing the petition, the debtors sold their home and used a portion of the sale proceeds to purchase an annuity. The debtors have failed to produce a copy of the annuity contract but they have described it in Mr. Barnes' declaration filed on October 24, 2001. As described, the debtors used cash realized from the sale of their home to purchase a future stream of income to be paid to them by Sun Life, the issuer of the annuity contract. If Mr. Barnes dies, Mrs. Barnes will receive the higher of the value of the account or the money paid by the debtors to Sun Life (less distributions) plus 5% per year through Mr. Barnes' eightieth birthday at which point the policy is convertible to an annuity.

On amended Schedule C, the debtors claimed the annuity as exempt pursuant to Cal.Civ.Proc.Code §§ 704.115 and 704.100(c). In responding to the trustees' objections, the debtors also maintain that the annuity is exempt pursuant to Cal.Civ. Proc.Code § 704.100(a).

**1**

■ Section 704.115(b) provides that:

All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement, allowance, disability payment, or death benefit from a private retirement plan are exempt.

The term "private retirement plan" is defined in section 704.115(a)(1)–(3).

As noted by the bankruptcy court in *In re Phillips*, 206 B.R. 196, 200 (Bankr. N.D.Cal.1997), paragraph (1) of section 704.115(a) provides an unhelpful tautological definition: a private retirement plan consists of a "private retirement plan." The Ninth Circuit and other courts have filled this definitional void by providing an analytical framework to determine whether a plan qualifies as a private retirement plan under section 704.115(b), as defined by section 704.115(a)(1).

■ First, the court must consider the use of the word "plan" in section 704.115(a)(1). A plan requires more than the instantaneous transmutation of a lump sum of previously nonexempt money or other assets into an exempt retirement plan. It contemplates the gradual accumulation of money to fund a future retirement. This is supported by the language of the statute, which provides that a private retirement plan means "private retirement plans, including, but not limited to, union retirement plans." Cal.Civ.Proc. Code § 704.115(a)(1). Union retirement plans provide for a retirement income funded by employee and employer annual contributions made over a long period of time.

In this case, the debtors purchased the annuity with proceeds from a home sale. The annuity was not purchased for the debtors by an employer, nor does it represent the gradual investment of contributed funds.

■ Second, the amount exemptible in a private retirement plan under section 704.115(a)(1) is unlimited. That is, the exemption is not limited to what is neces-

sary to support a debtor. If the court were to permit the debtors' exemption of the annuity, then, any debtor could avoid a loss of all assets to a bankruptcy trustee or a levying judgment creditor by declaring that those assets are funding a private retirement plan. It would be strange indeed if a person with a substantial net worth could avoid paying any debts, forever, through this mechanism. Paragraph (a)(1) of section 704.115 "does not extend to protect anything a debtor unilaterally chooses to claim as intended for retirement purposes." *In re Rogers*, 222 B.R. 348, 351 (Bankr.N.D.Cal.1998). *See also Lieberman v. Hawkins (In re Lieberman)*, 245 F.3d 1090, 1094 (9th Cir.2001) ("[I]f a debtor were permitted to exempt a fund created by himself under § 704.115(a)(1), ... 'the "necessary for support" limitation for plans created by the debtor under [§ 704.115(a)(3) ] would be eviserated.'" Quoting *Rogers*.).

■ This case is nearly identical to the facts in *Rogers*. There, the debtor converted non-exempt equity from her home into an annuity on the eve of bankruptcy. The court sustained the objection to the exemption of the annuity pursuant to section 704.115(a)(1). Here, the debtors purchased an annuity under the same circumstances and asserted that the annuity is made exempt by the simple fact that they intend the annuity to fund, in part, their retirement. Subjective intent alone is not sufficient for the creation of an exemptible private retirement plan.

Third, the debtors' retirement plan was not established by a third party. In *Lieberman* the Ninth Circuit held:

> The ... legislative history [of § 704.115(a)(1) ] leads to the conclusion that the legislature intended § 704.115(a)(1) to exempt only retirement plans established or maintained by private employers or employee organization, such as unions, not arrangements

by individuals to use specified assets for retirement purposes.

*Lieberman*, 245 F.3d at 1094. No private employer, employee group, or similar organization created the debtors' asserted private retirement plan. The debtors created it. Therefore, the annuity is not a private retirement plan within the meaning of section 704.115(a)(1).

### 2

Paragraph (2) of section 704.115(a) provides that a private retirement plan includes a profit-sharing plan designed and used for retirement purposes. The debtors do not contend that the annuity comprises a profit-sharing plan and there is no indication that the annuity was purchased with the profits of a business or some other enterprise.

### 3

■ The debtors fare no better under section 704.115(a)(3). The annuity is not a self-employed retirement plan or an individual retirement annuity or account "provided for in the Internal Revenue Code of 1986, as amended, ... to the extent the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code." Cal. Civ.Proc.Code § 704.115(a)(3).

Section 704.115(a)(3) provides an exemption only if the self-employed retirement plan is provided for in the Internal Revenue Code of 1986. In other words, it must be a tax qualified plan.

A qualified retirement plan is one that satisfies specific requirements of the Internal Revenue Code, particularly I.R.C. § 401(a), entitling it to receive favorable tax advantages. Before 1962, self-employed individuals (sole proprietors and partners) could not participate in or obtain the tax benefits of such retirement plans. Keogh or "H.R. 10" pension plans were authorized by legislation en-

acted as the Self–Employed Individuals Tax Retirement Act of 1962, Pub.L. No. 87–792, 76 Stat. 809 (1962). The act's purpose was to provide self-employed individuals with an opportunity to participate in retirement plans on a comparable basis to those offered corporate employees. S.Rep. No. 992 (1961), reprinted in 1962 U.S.C.C.A.N. 2964, 2971–2972. To this end, the act amended § 401 of the Internal Revenue Code "to provide that self-employed individuals may be covered under qualified pension and profit sharing plans." *Id.* at 2990. Initially, only individuals who were employees under common law could participate in such plans. The act expanded the definition of employee "to include, for any taxable year, a self-employed individual who has earned income ... for the taxable year." *Id.* at 2993. Further, since qualified plans had to be offered by "employers", the act expanded this definition as well, so that "an individual who owns the entire interest in an unincorporated trade or business" is treated as his own employer, and a partnership is treated as the employer of its partners. *Id.* at 2994.

*So. Calif. Permanente Medical Group v. Ehrenberg (In re Moses)*, 215 B.R. 27, 30 (9th Cir. BAP 1997), *affirmed*, 167 F.3d 470 (9th Cir.1999).

Whether one is considering a Keogh plan, a 401(k) plan, a simplified employee pension, or an IRA, these tax qualified plans share one feature in common. They provide for the gradual accumulation of a finite amount of pretax annual income in a tax qualified account in order to fund a taxpayer's future retirement. In this case, the debtors made a large, one-time investment outside of any traditional tax qualified retirement vehicle.

4

■ The debtors' interest in the annuity is also not exemptible pursuant to section 704.100.

Section 704.100(a) permits a debtor to exempt an unmatured life insurance policy, but not the loan value of such a policy. Section 704.100(c) exempts benefits from matured life insurance policies to the extent they are reasonably necessary for support.

The court first notes that in amended Schedule C, filed on August 21, 2001, the debtors claimed the annuity exempt pursuant to section 704.100(c). This means that the annuity must be a benefit from a matured life insurance policy and that the stream of income is necessary for the support of the debtors.

Such exemption is impermissible. First, the policy has not matured because Mr. Barnes is still alive. Second, there is no indication that the annuity payments are necessary for the debtors' support. Amended Schedules I and J show that the debtors are able to provide for their support without the annuity payments.

Finally, at the hearing on the objection to this exemption, counsel for the debtors conceded that they claim the exemption pursuant to section 704.100(a). This means that the annuity must be an unmatured life insurance policy.

■ To the extent the debtors claim the annuity as exempt under section 704.100(a), the objection is disallowed without prejudice because they have claimed no such exemption in Schedule C. Also, the debtors have not produced the annuity contract for the court. While the trustees have the burden of proving under Fed. R. Bankr.P. 4003(c) that the debtors are not entitled to the exemption,[2] the debtors are

---

**2.** The allocation of the burden of proof in Rule 4003(c) may run afoul with the Supreme Court's recent decision in *Raleigh v. Illinois Department of Revenue,* 530 U.S. 15, 120 S.Ct.

1951, 147 L.Ed.2d 13 (2000). In *Raleigh,* the debtor was the president of a defunct corporation that owed state use taxes. When the

duty bound by 11 U.S.C. § 521(4) to provide a copy of the contract to the chapter 13 trustee. The court will not place the trustees in the impossible position of objecting to the exemption without knowing what is in the annuity contract.[3]

And, there is ample reason for the trustees to be concerned about the debtors' right to exempt the annuity. Most courts which have considered the applicability of section 704.100(a) to annuity contracts have concluded that annuities are not life insurance policies. *See e.g., Bernard v. Coyne (In re Bernard),* 40 F.3d 1028, 1032 (9th Cir.1994), *cert. denied,* 514 U.S. 1065, 115 S.Ct. 1695, 131 L.Ed.2d 559; *Kennedy v. Pikush (In re Pikush),* 157 B.R. 155 (9th Cir. BAP 1993), *affirmed,* 27 F.3d 386 (9th Cir.1994).

For the foregoing reasons, the court concludes that the annuity is not exemptible under section 704.100(a).

Having disallowed the exemption of the motor home and the annuity, the court finds it unnecessary to address the additional objections raised by the trustees. In the event the debtors amend their exemptions again, the court, if timely requested to do so, will address the remaining objections.

## IV

The objections of the trustees to the confirmation of the proposed plan are sustained to the extent discussed below.

### A

■ As discussed above, the proposed plan is not feasible as required by 11 U.S.C. § 1325(a)(6). The original Schedules I and J show no disposable income with which to fund the plan. While the debtors amended Schedule J to reduce their monthly living expenses, they were unable to pay the resulting projected disposable income to the trustee in September and October of 2001. At the plan confirmation hearing, the debtors also conceded that Mrs. Barnes would need to return to work before the plan becomes feasible.

### B

■ 11 U.S.C. § 1325(a)(4) requires that a chapter 13 plan pay to unsecured

taxes were not paid, the state assessed them to the debtor as the responsible corporate officer. The assessment meant that the state believed the debtor was the person who had willfully failed to direct the corporation to pay the taxes. When the debtor filed a chapter 7 petition, the state filed a proof of claim based on its prior assessment. The trustee objected to the proof of claim on the ground that the state had not proven that the debtor was liable for payment of the tax. The Supreme Court rejected this argument, reasoning that outside of the bankruptcy court the corporate officer would have to prove that he was not the person responsible for filing returns and paying taxes for the corporation. Inside bankruptcy court the burden still rests with the debtor, or the trustee as the representative of the debtor's estate. The Supreme Court held, then, that when the matter in dispute is governed by nonbankruptcy substantive law, the burden of proof is dictated by that same nonbankruptcy law.

Under California law, the party claiming an exemption has the burden of proof when claiming or defending the exemption. *See* Cal.Civ.Proc.Code § 703.580(b). This includes exemptions that must be claimed and those that apply even absent a claim of exemption. *See* Cal.Civ.Proc.Code § 703.510(b). Since California has opted out of the federal exemption scheme, the debtors must claim California exemptions. *See* 11 U.S.C. § 521(b)(1); Cal.Civ.Proc.Code § 703.130. The burden of proof, then, is determined by California law and not the Bankruptcy Code or the Bankruptcy Rules. In this case, the debtors have not met the burden of proving their entitlement to an exemption under section 704.100(a).

3. The court also sustains the former chapter 7 trustee's objection to the evidence offered as a substitute for the contents of the annuity policy. *See* Objection filed October 29, 2001.

creditors no less than what they would receive in a chapter 7 liquidation. The proposed plan will not pay this minimum dividend.

The bar dates for filing proofs of claim expired on November 21, 2001 (claims by nongovernmental creditors) and January 3, 2002 (claims by governmental creditors). Total claims have been filed as follows:

| | |
|---|---|
| Administrative Claims | $ 3,030.00 [4] |
| Priority Claims | $ 5,772.95 |
| Unsecured Claims | $95,576.72 [5] |

Interestingly, the sole secured creditor listed on amended Schedule D, CIT, has not filed a proof of claim. Presumably, if the case were allowed to proceed under chapter 13, the debtors would file a proof of claim on behalf of CIT. *See* 11 U.S.C. § 501(c); Fed. R. Bankr.P. 3004; General Order 01–02, ¶ 6(f) (which extends the deadline for a debtor to file a proof of claim on behalf of a creditor). Otherwise, CIT would not be paid. The proposed plan provides: "To be paid, creditors, including secured creditors, must file proofs of claim." If the debtors will not pay CIT's claim in connection with the plan, CIT will eventually have the right to enforce its security interest against its collateral, the motor home. *See Southtrust Bank of Alabama v. Thomas (In re Thomas),* 883 F.2d 991 (11th Cir.1989), *cert. denied,* 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990); *Sun Finance Co., Inc. v. Howard (In re Howard),* 972 F.2d 639 (5th Cir.1992); *Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160 (4th Cir.1993).

Over the 60–month length of the proposed plan, the debtors intend to make a total of $40,180.00 in plan payments. After deducting the chapter 13 trustee's likely compensation, 10% of the amount distributed to creditors, the net distribution to creditors would be approximately $36,162.00. 28 U.S.C. § 587(e)(1).

Under the proposed plan, administrative claims would be paid first, then secured claims, next priority claims, and finally unsecured claims. Administrative and priority claims must be paid in full. 11 U.S.C. § 1322(a)(2). CIT's secured claim, estimated in the plan to be $12,500.00, must be paid in full and with interest. 11 U.S.C. § 1325(a)(5)(B). The plan proposes a 9% annual rate of interest on the secured claim. With an average monthly plan payment (net of trustee compensation) of $602.70, it will take approximately 37.25 months to pay all administrative, priority, and secured claims in full as proposed by the plan. This will leave approximately $13,712.00 [6] to be distributed to general unsecured creditors.

Because the court has sustained the objections to the claims of exemption of the mobile home and the annuity, and because the court has concluded that the debtors' interest in the trusts can be reached by the bankruptcy estate, an amount equivalent to the equity in the mobile home, $35,500.00, the annuity, $39,000.00, and the promissory note, $3,800.00,[7] a total of $78,300.00, must be paid to creditors.

In a chapter 7 liquidation, the $78,300.00 would be paid to creditors after payment of the chapter 7 trustee's fees. Such fees would total approximately $7,165.00. 11 U.S.C. § 326(a). This would leave

---

**4.** This is comprised of the former chapter 7 trustee's approved compensation of $1,530.00 and an estimated $1,500.00 in fees for the debtors' attorney.

**5.** The court has deducted from this amount duplicative proofs of claim filed by Yuba Plaza Associates, American Express Centurion Bank, and Max Recovery, the successor of Chase Manhattan.

**6.** $36,162.00–(37.25 × 602.70 = $22,450.57) = $13,711.43.

**7.** This asset was held in one of the trusts. The debtors did not attempt to exempt it.

$71,135.00 for creditors.[8] After payment of the priority tax claim of $5,772.00 and the debtors' attorney's fees of $1,500.00, $63,862.05[9] would be available for general unsecured claim holders.[10]

The present value of $63,862.05 must be paid through any chapter 13 plan. 11 U.S.C. § 1325(a)(4). Unsecured creditors must receive no less than what they would receive in a chapter 7 liquidation. This is sometimes referred to as the best-interest-of-creditor requirement.

In this case, the best-interest-of-creditor requirement is not met by the proposed plan. First, the plan specifies no dividend, whether 0%, 100%, or something in between, to be paid on general unsecured claims. Second, based on the court's analysis of the claims and the plan, the plan could pay an estimated dividend to unsecured creditors of $13,712.00 over 60 months. Even if the court assumes that the plan required the debtors to pay $13,712.00 to unsecured creditors, this is not the present value of $63,862.05 as required by section 1325(a)(4).

## C

■ Any chapter 13 plan must be proposed in good faith. 11 U.S.C. § 1325(a)(3). As discussed above, this case was converted to chapter 13 in order to derail the former chapter 7 trustee's administration of the bankruptcy estate. The conversion was part of a stratagem to prompt a dismissal of the case in order to protect unscheduled assets that could not be exempted. When the ploy failed, the debtors proposed a plan which they knew, or should have known, had no chance of confirmation. To propose such a plan is bad faith.

## V

For the foregoing reasons, the court will grant the motion to reconvert the case to chapter 7, sustain in part the objections to the exemptions of the mobile home and the annuity, and deny confirmation of the plan.

Counsel for the trustees shall lodge conforming orders. Upon their entry, the case will be re-transferred to Judge Klein and a status conference will be scheduled in Adversary Proceeding No. 01–2202.

8. The court has not included any fees for the chapter 7 trustee's attorney in this liquidation analysis. To do so would assume that the debtors would not voluntarily relinquish nonexempt assets to a chapter 7 trustee. Given that the debtors are under a duty to turnover nonexempt assets to a chapter 7 trustee, 11 U.S.C. § 521(4), and given that any chapter 13 plan must be proposed in good faith, 11 U.S.C. § 1325(a)(3), the court will not assume that the debtors would have to be compelled to turnover nonexempt assets in a hypothetical chapter 7 liquidation.

9. If the debtors were to amend their Schedule C to include an exemption of the annuity pursuant to Cal.Civ.Proc.Code § 704.100(a), and if they were able to defeat the objections to any such amended exemption, this might reduce the amount that would have to be paid from $63,862.05 to $24,862.05. The proposed plan, however, will not pay this reduced amount to general unsecured creditors.

10. In the above liquidation analysis, the court has made no deduction for the payment of the former chapter 7 trustee's administrative claim. Such deduction would be duplicative since the liquidation analysis assumes that the chapter 7 trustee would receive the maximum compensation under section 326(a).