FILED

OCT 05 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos.  CC-15-1032-KuKiTa |
| | CC-15-1353-KuKiTa |
| RUBEN GONZALEZ CUEVAS, | |
| | Bk. No.  2:14-bk-32359-NB |
| Debtor. | |
| | |
| RUBEN GONZALEZ CUEVAS | |
| | |
| Appellant. | **MEMORANDUM**[*] |
| | |
| RUBEN GONZALEZ CUEVAS; PHILIP E. KOEBEL, | |
| | |
| Appellants, | |
| | |
| v. | |
| | |
| STEVAN CHANDLER, Trustee of the Juliana Cuevas Living Trust; HEIDE KURTZ, Chapter 7 Trustee, | |
| | |
| Appellees. | |

Argued and Submitted on September 22, 2016
at Pasadena, California

Filed – October 5, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Neil W. Bason, Bankruptcy Judge, Presiding

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Appearances:   Philip E. Koebel argued for appellants.[**]

Before: KURTZ, KIRSCHER and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Former chapter 13[1] debtor Ruben Gonzalez Cuevas appeals from the dismissal of his chapter 13 case based on the bankruptcy court's finding of bad faith. Cuevas and his counsel, Philip E. Koebel, also appeal from sanctions orders entered against Koebel under Rule 9011 and under the bankruptcy court's inherent authority. None of Cuevas' arguments challenging the dismissal order justify reversal. In addition, appellants failed to set forth in their second amended joint appeal brief any arguments specifically and distinctly challenging the sanctions orders.

Accordingly, we AFFIRM.

## FACTS

Cuevas is more than 70 years old and survives on a small military pension and Social Security benefits totaling, in aggregate, roughly $1,070 per month. For many years, Cuevas lived in a house on Mariposa Street in Altadena, California. Title to the house was held by the Juliana Cuevas Living Trust.

[**]Chandler and Kurtz only are appellees in the appeal from the sanctions orders. As stated in this Panel's order entered June 2, 2015, there is no appellee in the appeal from the bankruptcy court's dismissal order. Neither appellee actively participated in the sanctions appeal.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

Juliana was Cuevas' mother. The house is the trust's only significant asset, and Cuevas' sister Grace Dibble was named in the trust to serve as the trustee. Upon Juliana's death in 2005, the trust provided for the division of the trust's beneficial interest into three equal shares, with Cuevas, Dibble and Cuevas' brother Daniel each to receive one share.

In 2006, Dibble obtained an order from the probate court confirming the trust's ownership of the house, and in 2007 Dibble obtained an order from the Los Angeles County Superior Court entitling Dibble to recover possession of the house. However, two days before the scheduled eviction, Cuevas filed his chapter 7 bankruptcy case, which has been pending since October 2, 2007. Almost immediately, Dibble sought and obtained relief from the automatic stay; the order permitted her to proceed with the state court litigation over ownership of the house but did not permit her to evict Cuevas absent further order of court.

At first, the chapter 7 trustee seemed content to rely upon Dibble's efforts to evict Cuevas and sell the house. By the end of 2009, however, the chapter 7 trustee had lost confidence in Dibble's efforts, so he moved the probate court to remove her and to appoint a successor probate trustee. Even though it was later discovered that Dibble (apparently without notice or probate court approval) had transferred title to the house from the probate trust to a trust in her own name, it took the chapter 7 trustee until December 2012 to obtain a probate court order permanently removing Dibble and appointing a successor probate trustee – Stevan Chandler.

3

Dibble and Cuevas resisted Chandler's efforts to, respectively, return title to the probate trust and to evict Cuevas and liquidate the house. Meanwhile, after several years as a chapter 7 debtor, Cuevas filed a series of motions – all unsuccessful – seeking either to dismiss his chapter 7 case or to convert it to chapter 13. He also sought to claim a homestead exemption in the house, but the bankruptcy court overruled Cuevas' homestead exemption claim. Because the house was owned by the probate trust and not by Cuevas, the court explained, he did not have any interest in the house to exempt.

After recovering title to the house on behalf of the probate trust in 2014, Chandler commenced an unlawful detainer action against Cuevas, which was scheduled for trial in January 2015. Even though Cuevas' 2007 chapter 7 bankruptcy case was still pending, Cuevas filed his chapter 13 petition in December 2014, which effectively stayed the unlawful detainer trial.

Soon thereafter, the bankruptcy court sua sponte entered an order to show cause why the new chapter 13 case should not be dismissed. In response, Cuevas argued that there was no per se rule against him filing a chapter 13 case after receiving his chapter 7 discharge but before his chapter 7 case had been fully administered and closed. Cuevas further argued that his chapter 13 case had been filed in good faith and for a legitimate purpose, but the bankruptcy court disagreed. The bankruptcy court explained that there was little or no post-chapter 7 debt to deal with in the chapter 13 case, no prospect of Cuevas receiving a discharge and no real source of income or assets available permitting Cuevas to pay any debts, so there was no

4

legitimate bankruptcy purpose behind the filing of Cuevas' chapter 13 case. The court further noted that the assumptions underlying Cuevas' chapter 13 plan ignored the reality of the bankruptcy court's relief from stay and homestead exemption rulings in Cuevas' chapter 7 case. Based thereon, the bankruptcy court concluded that the chapter 13 case should be dismissed and the debtor should be barred for a period of two years from filing a new bankruptcy case.

On the same day the bankruptcy court entered its chapter 13 case dismissal order (January 16, 2015), the court also issued an order to show cause why Cuevas' counsel Koebel should not be sanctioned "under . . . §§ 105(a) or 329, Fed. R. Bankr. P. 9011, L.B.R. 2090-1 and 2090-2, this court's General Order 96-05, this court's inherent sanctioning authority, or any other applicable law or rule." According to the court, Koebel's filing of Cuevas' chapter 13 petition and the positions Koebel took in attempting to prevent dismissal of the chapter 13 case tended to demonstrate that sanctions against Koebel were warranted.

Both Koebel and Chandler filed responses to the sanctions show cause order. In addition, the court permitted Chandler an opportunity to file his own motion under Rule 9011 seeking attorney's fees awards against Koebel and in favor of Chandler and the chapter 7 trustee. The court also convened multiple hearings and permitted supplemental briefing by both sides.

Cuevas also filed a motion to "correct" the bankruptcy court's chapter 13 case dismissal order and a notice of appeal from that order. While Cuevas cited Civil Rule 60(a) as the basis for his motion to correct, many of the issues raised in the

5

motion actually sought supplemental, clarifying, and amended findings of fact and conclusions of law.

Ultimately, the bankruptcy court issued a detailed and thorough memorandum decision disposing of Cuevas' motion to correct as well as all outstanding sanctions issues. The bankruptcy court granted in part Cuevas' motion to correct. The bankruptcy court agreed that a couple of inadvertent errors and omissions in the dismissal order needed to be corrected. The bankruptcy court's memorandum decision also elaborated on the findings and reasoning supporting dismissal of Cuevas' chapter 13 case. In summary, the court explained, Cuevas only filed his chapter 13 case to delay his eviction and to increase the litigation costs of Chandler and the chapter 7 trustee. The court described as "nonsense" Cuevas' various assertions as to why he needed to pursue chapter 13 relief. According to the court, Cuevas' claim that he needed to address in chapter 13 debt that arose after the filing of his chapter 7 petition was a sham. The court similarly characterized as shams Cuevas' alternate theories about how he could fund his chapter 13 plan – either from non-existent disposable income or from a wholly-speculative and overly-optimistic expectation of a distribution from his chapter 7 case.

The court denied all other relief requested in Cuevas' motion to correct.

With respect to sanctions, the bankruptcy court ordered the following sanctions against Koebel: (1) a sanctions award of $15,346.30 in fees and costs to be paid to Chandler; (2) a sanctions award of $2,110.60 in fees and costs to be paid to the

6

chapter 7 trustee; and (3) a referral to the Central District of California disciplinary panel, with a recommendation that Koebel be referred to the California state bar, be suspended from practice for a period of no less than six months and be subject to a probationary period of practice of four and one-half years.

The bankruptcy court reasoned that Koebel's subjective bad faith and objectively unreasonable conduct in filing Cuevas' chapter 13 petition and in opposing dismissal of the case (as identified in its original January 2015 dismissal order and as elaborated on in the memorandum decision) constituted ample grounds for the imposition of sanctions under Rule 9011 and under the court's inherent powers.

The bankruptcy court entered its amended order dismissing Cuevas' chapter 13 case on September 30, 2015, and its sanctions orders on October 28, 2015, and Cuevas and Koebel timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Has Cuevas raised any meritorious arguments for reversal of the chapter 13 case dismissal order?

2. Has Koebel raised any meritorious arguments for reversal of the sanctions orders?

## STANDARDS OF REVIEW

While a bankruptcy court's finding of bad faith is reviewed under the clearly erroneous standard, the dismissal of a

7

bankruptcy case for cause based on a finding of bad faith is reviewed for an abuse of discretion. Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1222-23 (9th Cir. 1999).

We also review for an abuse of discretion all aspects of the bankruptcy court's imposition of sanctions under both Rule 9011 and under its inherent sanctioning authority. Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009); Shalaby v. Mansdorf (In re Nakhuda), 544 B.R. 886, 898 (9th Cir. BAP 2016); DeLuca v. Seare (In re Seare), 515 B.R. 599, 614 (9th Cir. BAP 2014).

The bankruptcy court abuses its discretion if it applies an incorrect legal rule or its factual findings are illogical, implausible or without support in the record. See U.S. v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We review de novo whether an appellant's due process rights have been violated. In re Seare, 515 B.R. 615.

**DISCUSSION**

Under § 1307(c), the bankruptcy court may dismiss a chapter 13 bankruptcy case "for cause". Bad faith of the debtor in filing his or her bankruptcy petition is one type of cause for dismissal. In re Leavitt, 171 F.3d at 1224. The bankruptcy court, here, articulated and applied the correct legal standard – the totality of the circumstances. Additionally, the bankruptcy court either explicitly or implicitly considered the four factors set forth in In re Leavitt that bankruptcy courts are supposed to consider before dismissing a case based on bad faith. The four Leavitt factors are:

(1) whether the debtor misrepresented facts in his

8

> petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present.

Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 917-18 (9th Cir. BAP 2011) (quoting In re Leavitt, 171 F.3d at 1224). These same four factors can be critical when the bankruptcy court is considering imposing restrictions on the debtor's future bankruptcy filings. See In re Leavitt, 171 F.3d at 1224 ("a finding of bad faith based on egregious behavior can justify dismissal with prejudice"); see also In re Ellsworth, 455 B.R. at 922 (instructing courts to consider alternatives to dismissal with prejudice, including "barring the debtor from refiling for 180 days pursuant to § 109(g), or for some other length of time.").

Cuevas contends that the bankruptcy court did not consider the totality of the circumstances and ignored evidence that, according to Cuevas, tends to show his good faith in filing the petition. Cuevas claims that the contents of his chapter 13 schedules and his plan demonstrate good faith, but the bankruptcy court found otherwise. After reviewing (among other things) Cuevas' schedules, his plan and the orders issued by the bankruptcy court in Cuevas' chapter 7 case, the bankruptcy court found that Cuevas did not have any genuine prospect of addressing (or any genuine need to address) any post-chapter 7 indebtedness at the time he filed his chapter 13 petition. The bankruptcy court further found that Cuevas actually filed his chapter 13 petition for the improper purpose of impeding Chandler's upcoming

9

unlawful detainer trial and to increase the expense and delay associated with Chandler's actions on behalf of the probate trust and the chapter 7 trustee's actions on behalf of the chapter 7 bankruptcy estate.

Cuevas insists that there were post-chapter 7 tax debts that needed to be addressed. Even if we were to assume that this is true, Cuevas has not pointed us to anything in the record which persuades us that the bankruptcy court committed clear error when it determined that, at the time Cuevas filed his chapter 13 petition, he had no genuine ability to address (pay) any portion of these debts by way of a chapter 13 plan.

Cuevas' claim that he potentially will obtain in the future an (exemptible) ownership interest in the house currently owned by the trust is an example of the dubious nature of Cuevas' claims regarding plan funding. Cuevas does not dispute that the trust owns the house and that Chandler, as trustee, has been attempting for years to sell the house pursuant to the trust's terms so that the sale proceeds can be used to pay the costs of trust administration and so that any remaining proceeds can be distributed to the trust's beneficiaries. Cuevas also has conceded that the bankruptcy court in the chapter 7 case entered a final and non-appealable order disallowing Cuevas' homestead exemption claim because the trust – not Cuevas – owned the house. Cf. In re Barnes, 275 B.R. 889, 896-97 (Bankr. E.D. Cal. 2002) (debtor/beneficiary of self-settled irrevocable trust was not owner of trust assets and hence could not exempt trust assets). And yet Cuevas argued in his chapter 13 case that he somehow still could end up with an ownership interest in the house that

10

could be exempted. Cuevas, himself, admitted in his opening appeal brief that the only way this homestead exemption could arise was "in the unlikely event that the Chapter 7 trustee administers the Chapter 7 bankruptcy estate by awarding the Debtor his home." Aplt. Opn Br. (April 18, 2016) at pp. 24-25. Furthermore, Cuevas has not explained how, if this unlikely event (home ownership) were to occur in the future, it would have affected his exemption rights in bankruptcy, when such rights ordinarily are fixed on the date the petition is filed. See Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1199 (9th Cir. 2012).

Cuevas' alternate plan funding claim that he can expect close to a $200,000 distribution from the trust is even more doubtful. The projected $200,000 payout is based on Cuevas' belief that he will receive one-third of the fair market value of the house, which he alleges to be $600,000. Cuevas' calculation did not account for any costs of sale or for Chandler's reasonable expenses in administering the probate trust, which have ballooned as a result of the actions taken by Cuevas and his sister Dibble in the state court and in the bankruptcy court over the course of the last decade. Nor did Cuevas' calculation account for the fact that any net distribution Cuevas otherwise might be entitled to receive from the probate trust presumably will be property of his chapter 7 bankruptcy estate and that the allowed claims of his chapter 7 creditors and the allowed administrative claims of the chapter 7 trustee presumably will need to be paid in full before Cuevas can receive any payout as the chapter 7 debtor. See § 726.

11

After considering these facts and all of the other relevant circumstances, the bankruptcy court found that, by filing his chapter 13 petition, Cuevas improperly and in bad faith sought to obstruct Chandler's pending unlawful detainer proceedings and to cause Chandler and the chapter 7 trustee to incur additional expense and delay in carrying out their duties. Had the members of this panel presided over Cuevas' chapter 13 case, it is possible that one or more of us might have made a different finding. Even so, on this record, we cannot say that the bankruptcy court's bad faith finding was illogical, implausible or not supported by the record. See Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) ("A bankruptcy court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record.").

On appeal, Cuevas raised six other issues that also lack merit. According to Cuevas, the bankruptcy court lacked authority to dismiss the chapter 13 bankruptcy case on its own motion. This is simply wrong. Section 105(a) explicitly provides the bankruptcy court with this authority. In relevant part, § 105(a) states: "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." See also Tennant v. Rojas (In re Tennant), 318 B.R. 860, 869 (9th Cir. BAP 2004) (holding that bankruptcy court may sua sponte dismiss a chapter 13 case under §§ 1307 and 105(a)).

Cuevas further argued that the bankruptcy court adopted a

12

per se rule against commencing a chapter 13 case after the debtor has received his discharge but before full administration of the debtor's pending chapter 7 case. But the bankruptcy court did not adopt any per se rule. The bankruptcy court looked at the history of Cuevas' chapter 7 case, and the commencement of the chapter 13 case while the chapter 7 case was still pending, as one of the many circumstances that ultimately led the bankruptcy court to conclude that the chapter 13 case had been filed in bad faith. It was appropriate for the bankruptcy court to consider the history, the status and the interrelationship of the two cases in rendering its bad faith determination. In re Ellsworth, 455 B.R. at 917-18 (identifying "the debtor's history of bankruptcy filings" as one of the factors the bankruptcy court should consider in determining bad faith).

Cuevas next claimed that the bankruptcy court erroneously imposed the burden of proof to establish good faith on the debtor. The bankruptcy court's memorandum decision establishes that this claim is false. The bankruptcy court, in essence, stated that there were sufficient undisputed facts regarding Cuevas' conduct to establish a prima facie case that the chapter 13 petition was filed in bad faith and that Cuevas did not present evidence sufficient to rebut this prima facie case. See Memorandum Decision (Sept. 30, 2015) at 6:4-10.

Cuevas additionally asserted that he was denied due process. Cuevas' due process argument was two-fold. Cuevas first argued on appeal that he did not know that the court's order to show cause re dismissal raised the issue of bad faith. Cuevas alternately argued on appeal that he was denied due process

13

because the bankruptcy court considered Chandler's response to the order to show cause, and Cuevas had no time or opportunity to respond to the factual contentions and legal arguments set forth in Chandler's response, because Chandler's response was filed a couple of days before the hearing on the order to show cause. We are perplexed by Cuevas' claim that he was surprised by the bad faith issue. The case cited in the dismissal order to show cause – Grimes v. United States (In re Grimes), 117 B.R. 531 (9th Cir. BAP 1990) – references and discusses bad faith as a pertinent issue and so did Cuevas' response to the order to show cause. Thus, we don't understand how Cuevas can claim he did not know that his alleged bad faith was at issue. As for Chandler's response, while Cuevas complained at the January 2015 dismissal hearing about needing more time because he was surprised about the bad faith issue, he did not argue that he needed more time because of the response that Chandler filed. Indeed, before the hearing occurred, Cuevas did file papers addressing some of the points that Chandler argued, and the bankruptcy court considered those papers.

In any event, even if we were to assume that there were some sort of deficiency in the notice and opportunity to be heard initially provided to Cuevas, the record does not reveal any prejudice to Cuevas as a result of any such deficiency. We have reviewed the entire record of the months of proceedings that took place in the bankruptcy court in association with both the dismissal of the case and the sanctions order to show cause. These proceedings included, in relevant part, a limited remand granted by this Panel to permit Cuevas the opportunity to file

14

whatever motion he deemed necessary to address any defects in the bankruptcy court's initial dismissal order or in the proceedings leading up to that dismissal, and Cuevas thereafter did file a motion to "correct" the dismissal order.  In its September 30, 2015 memorandum decision, the bankruptcy court carefully and thoroughly addressed all of the points Cuevas raised in his motion to correct.  At no time during these supplemental proceedings did Cuevas attempt to reference any new or different facts that reasonably could have countered the bankruptcy court's bad faith finding.  Nor are any such facts evident in Cuevas' appeal brief.  Under these circumstances, we can and will reject Cuevas' due process arguments because of the absence of prejudice.  See Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 776 (9th Cir. 2008).

There are only two other arguments Cuevas raised on appeal that we need to address.  Cuevas argues on appeal that the bankruptcy court erred because it did not consider the effect of Law v. Siegel, 134 S.Ct. 1188 (2014) on Ceuvas' homestead exemption rights before dismissing his chapter 13 case for bad faith.  Cuevas similarly argues that the bankruptcy court should have considered the effect of Frealy v. Reynolds, 779 F.3d 1028 (9th Cir. 2015) and Neuton v. Dannig (In re Neuton), 922 F.2d 1379 (9th Cir. 1990), both of which deal with the treatment in bankruptcy of a debtor-beneficiary's interest in a spendthrift trust.  Cuevas did not raise Law, Frealy or Reynolds at any point during the chapter 13 dismissal proceedings.  Moreover, the exemption arguments that Cuevas seeks to introduce by reference to these three decisions in large part constitute an

15

impermissible collateral attack on the bankruptcy court's final and non-appealable orders entered in Cuevas' chapter 7 case. The bankruptcy court's December 21, 2012 order denying Cuevas' homestead exemption claim and its March 9, 2012 summary judgment explicitly rejecting Cuevas' spendthrift trust claims effectively preclude Cuevas from raising the issues addressed in Law, Frealy and Reynolds in the current appeals from unrelated orders. See Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.), 922 F.2d 1438, 1442 (9th Cir. 1991) (rejecting as frivolous appellant's attempted collateral attack on bankruptcy court's final, non-appealable sale order).

Cuevas and Koebel did not include in their appeal brief any arguments specifically and distinctly addressing the bankruptcy court's sanctions rulings. As a result, they forfeited their right to raise these arguments on appeal. See Christian Legal Soc'y v. Wu, 626 F.3d 483, 487–88 (9th Cir. 2010); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) (citing Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir. 1994)).

Appellants might consider it unjust for this Panel to deem any arguments challenging the sanctions orders forfeited. Given the procedural history of the appellants' appeals, we disagree. In the appeal from the sanctions orders (CC-15-1353), this Panel originally set a deadline of November 30, 2015 for appellants' opening brief. That deadline passed without Cuevas and Koebel filing their opening brief. On February 29, 2016, this Panel issued an order denying Cuevas' and Koebel's request to consolidate the dismissal appeal and the sanctions appeal. In that order, the Panel noted that the appellants' appeal brief for

16

the sanctions appeal was past due and granted appellants one final chance to file their opening appeal brief for the sanctions appeal. The order set a final due date of 28 days from the date of the order (March 28, 2016) and specified that "[n]o further extensions of time will be granted."

Instead of filing the opening brief for the sanctions appeal or seeking prompt reconsideration of the scheduling aspects of the Panel's February 29, 2016 order, appellants waited until March 28, 2016 – the date the brief was due – and filed an "emergency motion" to suspend the briefing schedule or in the alternative for an additional thirty-day extension. Furthermore, the contents of the so-called emergency motion indicate that all of the factual allegations on which the motion was based were known to appellant Koebel at the time the Panel entered its February 29, 2016 order.

Then, on April 18, 2016, appellants filed what they suggested was a second amended joint brief for both the dismissal appeal and the sanctions appeal; but this brief still did not include any arguments specifically and distinctly challenging the sanctions orders. Instead, as part of their filing of this brief, the appellants included a "preamble" renewing appellants' request for suspension or extension of the briefing schedule for the sanctions appeal and indicating that, if those requests ultimately were denied, appellants anticipated filing a request to supplement their second amended joint brief.

Finally, on May 25, 2016, the Panel issued an order in the sanctions appeal denying suspension of briefing and stating that "[a]ppellants must rest on the brief they have filed in this

17

appeal."

By (not) prosecuting the sanctions appeal in this fashion, appellants sought to substitute their judgment in place of the Panel's regarding when the sanctions appeal should be briefed. They further attempted to undermine the Panel's authority to control its docket and the course of proceedings. See generally Hernandez v. City of El Monte, 138 F.3d 393, 398 (9th Cir. 1998) (acknowledging such authority); United States v. Oregon, 913 F.2d 576, 589 (9th Cir. 1990) (same). Consequently, it is not unjust to deem all of appellants' sanctions-related arguments forfeited under Wu and Brownfield.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's dismissal of Cuevas' chapter 7 bankruptcy case and its imposition of sanctions.